**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| BRANDON HOGAN, | : | |
| | : | |
| Plaintiff, | : | Case No. _____ |
| | : | |
| v. | : | |
| | : | |
| GENERAL MILLS OPERATIONS, LLC, | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

Plaintiff is a putative class member and unnamed plaintiff in separate class action litigation pending in this Court, Case No. 1:24-cv-02409-MLB-JKK. Pursuant to the parties' consent Omnibus Management Consent Order in that case (Doc. 36), Plaintiff hereby files his known ripe claims.

## JURISDICTION AND VENUE

1.

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(4), which confers original jurisdiction upon this Court in a civil action to recover damages or to secure equitable or other relief under any Act of Congress providing for the protections of civil rights, and pursuant to 28 U.S.C. § 1331, which confers original

jurisdiction upon this Court in a civil action arising under the Constitution or laws of the United States.

2.

Plaintiff asserts claims under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981").

3.

Pursuant to 28 U.S.C. § 1391(b), § 1391(c), and N.D. Ga. L.R. 3.1, the Atlanta Division of this Court is the proper venue for Plaintiff's claims because Defendant is subject to this Court's personal jurisdiction, 28 U.S.C. § 1391(c)(2), and a substantial part of the events or omissions giving rise to the claim occurred within the Atlanta Division of this Court.  *See also* N.D. Ga. L.R. 3.1(B)(1)(a) and 3.1(B)(3).

## PARTIES

4.

Plaintiff is a Black male and a former employee of Defendant who worked at General Mills' manufacturing facility in Covington, Georgia, until he resigned in April 2021.

5.

Plaintiff is a citizen of the United States and resident of the State of Georgia; he submits himself to the jurisdiction of this Court.

6.

General Mills Operations, LLC ("Defendant" or "General Mills"), is a Delaware limited liability company with its principal place of business in Minneapolis, Minnesota, and was properly served by personal service of process upon its registered agent, National Registered Agents, Inc., 289 S. Culver Street, Lawrenceville, Georgia 30046.

## STATEMENT OF FACTS

7.

Hogan worked in the Snacks Department of West Plant.

8.

At first, Hogan worked at General Mills through a temporary staffing agency, ResourceMFG.

9.

Around February 2020, Hogan was hired by Defendant directly.

10.

The entire time that Hogan worked for General Mills, his Technician Team Lead ("TTL") was Tanis Corley.

11.

Grigory also made racially charged comments to Hogan and other Black employees in Corley's presence, such as Black Americans would be better off enslaved than living in another country.

12.

Grigory sent multiple racist and Islamophobic messages and images to another General Mills employee. Some examples of Grigory's racist text messages are reprinted below in paragraphs 13-15 and evidence Grigory's racially discriminatory animus that was open and obvious to Defendant.

13.



14.



15.





16.

Grigory was previously in the Army.  Individuals in his platoon described him as a Neo-Nazi and Skinhead affiliated with a white supremacy organization in California.

17.

Grigory constantly talked about politics, Black people, and being a sniper in the military.

18.

Grigory was roommates with a Black person in his platoon.  Grigory openly played skinhead music with lyrics such as "[N-word] [N-word] get on the boat, [N-word] [N-word] row row."  The Black platoon member asked Grigory if they were friends and he responded, "I would take a bullet for you, man.  But when the race war starts, stay away from me and I will try to wait and kill you last."

19.

Numerous circumstances about Grigory made non-extremist employees uncomfortable.  For instance, Grigory married and had a child with his former step-daughter who he raised from when she was nine years old.

20.

On one occasion, Grigory invited Hogan to his house.  Hogan was planning to go until another racist white technician, Samuel "Boley" Harrison, told Hogan that he did not think it was safe for him to do that because Grigory was "extremely racist."

21.

One of Grigory's technician teammates was Ascanio "Tony" Campos, who also sent racist text messages to one of Hogan's teammates, including the screenshot reprinted in paragraph 22.

22.



23.

Hogan reported discrimination and harassment by Grigory to HR and his platform lead, Corley's supervisor.

24.

Hogan was told by HR and the platform lead that they did not have "time to babysit."

25.

Because racist white technicians were permitted to openly make racist and derogatory comments about Black people, Hogan surmised that he would not get a fair chance to advance in the company.

26.

Because he would never have the same rights and privileges of white employees, Hogan resigned in April 2021.

## COUNT ONE

### 42 U.S.C. § 1981:  Race Discrimination

27.

Plaintiff repeats and realleges each and every allegation above as it set forth herein in full.

28.

Pursuant to the Civil Rights Act of 1866 –

> All persons within the jurisdiction of the United States shall
> have the same right in every State and Territory to make and
> enforce contracts . . . and to the full and equal benefit of all laws
> and proceedings for the security of persons and property as is
> enjoyed by white citizens, and shall be subject to like
> punishment, pains, penalties, taxes, licenses, and exactions of
> every kind, and to no other.

42 U.S.C. § 1981(a). This provision applies to nongovernmental discrimination. *Id.*
at § 1981(c).

29.

General Mills has knowingly allowed white supervisors and decision
makers who are members of a fraternal white supremacist organization, "the
Good Ole Boys," to operate the Covington facility in a manner that systematically
permits technicians and supervisors with racial and discriminatory animus to
impact the job duties and compensation of certain disfavored employees.

30.

Hogan's supervisor, HR, and platform lead were aware of him being harassed, bullied, threatened, and discriminated against on the basis of race.

31.

Hogan's direct supervisor Tanis Corley directly witnessed Grigory harassing Hogan and took no action.

32.

Plaintiff asserts a disparate treatment claim pursuant to 42 U.S.C. § 1981.

33.

The actions by General Mills described in this Count amount to an ongoing and continuous violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

34.

Plaintiff is entitled to an award of damages against Defendant in an amount equal to all monetary and non-monetary losses he suffered.

**COUNT TWO**

42 U.S.C. § 1981:  Retaliation

35.

Plaintiff repeats and realleges each and every allegation above as it set forth herein in full.

36.

Plaintiff engaged in a protected activity when he complained about racist comments being made by Grigory in front of his supervisor.

37.

Management and HR tolerating this behavior indicated to Hogan that he would never get the same work experience and opportunities as white employees.

38.

In retaliation for Plaintiff's complaints, Defendant took materially adverse actions against him, including taking no action to prevent ongoing harassment by Grigory or otherwise ensuring his equal treatment to white employees.

39.

Plaintiff asserts a retaliation claim pursuant to 42 U.S.C. § 1981.

## **COUNT THREE**

### 42 U.S.C. § 1981:  Hostile Work Environment

40.

Plaintiff repeats and realleges each and every allegation above as it set forth herein in full.

41.

Plaintiff was discriminated against and harassed based on his race by General Mills' technicians and the same was allowed by supervisors and HR.

42.

The racist technicians' discriminatory statements, threats, and conduct were unwelcome, sufficiently severe or pervasive, detrimentally affected Plaintiff, were viewed as subjectively hostile and abusive by Plaintiff, and would be viewed as objectively hostile and abusive to a reasonable person.

43.

Plaintiff complained about this discrimination and harassment, and General Mills had actual or constructive knowledge of the ongoing discriminations and/or the harassing conduct was undertaken by and/or condoned by General Mills employees in management roles.

44.

Defendant failed to take prompt and appropriate remedial action to prevent or correct further discrimination and harassment of Plaintiff.

45.

Plaintiff asserts a hostile work environment claim pursuant to 42 U.S.C. § 1981.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a TRIAL BY JURY and the following relief:

(a)   Declaratory judgment that General Mills violated Hogan's § 1981 rights;

(b)   Temporary and permanent injunctive relief, along with this Court's oversight for a reasonable duration, disbanding the Good Ole Boys, holding racist technicians and decisionmakers accountable, and implementing lawful employment practices that give employees the full benefit of employment at General Mills without regard to race or other protected characteristics;

(c)   Full back pay from the date of Hogan's separation from the company taking into account all raises to which Hogan would have been entitled but for Defendant's unlawful activity, and all fringe and pension benefits of employment, with prejudgment interest thereon;

(d)   Reinstatement or front pay to compensate Hogan for lost future wages, benefits, and pension;

(e)   Full amount of financial losses caused to Plaintiff as a result of the racist employment practices at the Covington facility;

(f)     Compensatory damages in an amount to be determined by the enlightened conscience of the jury for Plaintiff's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, and special damages;

(g)     Award of costs and expenses of this action, together with reasonable attorney and expert fees;

(h)     Punitive damages in an amount to be determined by the enlightened conscience of the jury sufficient to punish Defendant for its conduct toward Plaintiff and deter Defendant from similar conduct in the future;

(i)     Judgment against Defendant for damages incurred by Plaintiff;

(j)     Judgment against Defendant in an amount to fully and adequately compensate Plaintiff;

(k)     An award of pre-judgment and post-judgment interest;

(l)     A trial by jury on all issues triable to a jury; and

(m)    Other and further relief as the Court deems just and proper.

Respectfully submitted this 18th day of February 2025.


By:    /s/ Douglas H. Dean
       Georgia Bar No. 130988
       Attorney for Plaintiff
       Dean Thaxton, LLC
       601 E. 14th Avenue (31015)
       Post Office Box 5005
       Cordele, Georgia 31010
       T:  (229) 271-9323
       F:  (229) 271-9324
       E: *doug@deanthaxton.law*


By:    /s/ Linda G. Carpenter
       Georgia Bar No. 111285
       Sharon L. Neal, Esq.
       Georgia Bar No. 536060
       Attorneys for Plaintiff
       The Brosnahan Law Firm
       31 Lenox Pointe, NE
       Atlanta, GA 30324
       T:  (404) 853-8964
       F:  (678) 904-6391
       E: *lgc@brosnahan-law.com*
       E: *sharon@brosnahan-law.com*